# EXHIBIT C

1. Claimant<br>
2. Jonathan Robert Fortnam<br>
3. Ninth<br>
4. Exhibit "JRF9"<br>
5. 15 February 2019

Claim Nos. CL-2018-000297, CL-2018-000404 and CL-2018-000590 (consolidated)

**In the High Court of Justice**
**Business and Property Courts of England & Wales**
**Commercial Court**

**Between:**

**SKAT**
**(the Danish Customs and Tax Administration)**

**Claimant**

and

**Solo Capital Partners LLP (in special administration) and Others**

**Defendants**

---

**NINTH WITNESS STATEMENT OF**
**JONATHAN ROBERT FORTNAM**

---

I, **JONATHAN ROBERT FORTNAM**, solicitor and partner in the firm of Pinsent Masons LLP of 55 Colmore Row, Birmingham B3 2FG **WILL SAY AS FOLLOWS:**

1. My firm is instructed by the claimant, the Danish Customs and Tax Administration, in these consolidated claims. I am authorised by the claimant to make this witness statement on its behalf in support of its application to amend the claimant's name in these consolidated claims.

2. The Claimant is the Danish Tax Agency with responsibility for the collection of taxes. The Claimant alleges that it has been the victim of an organised fraud on a massive scale which has resulted in it paying out the Sterling equivalent of £1.5 billion. This has led to three claims being commenced in England against 98 Defendants under Claim Number CL-2018-000297 issued on 4 May 2018, Claim Number CL-2018-000404 issued on 15 June 2018, and Claim Number CL-2018-000590 issued on 11 September 2018 (the "**Claims**").

3. The contents of this, my ninth witness statement in the Claims, are true where they concern maters within my own personal knowledge and are true to the best of my knowledge, information and belief where they concern matters outside of my own personal knowledge. Save where indicated to the contrary, the facts and matters stated herein are from my own knowledge or from documents within my control. I do not have authority to and do not intend to waive privilege by anything said in this witness statement.

4. There is now produced and shown to me, and exhibited hereto marked "JRF9", a paginated bundle of copy documents to which I refer to in this witness statement.

**The Application**

5. This witness statement is made in support of an application to amend the Claim Forms and the Particulars of Claim to update and/or correct the Claimant's name under CPR Rule 17.1(2)(b) and CPR Rule 17.4 to change the Claimant's name in the English proceedings (the "**Name Change Application**"). The amendments proposed are to change the name of the Claimant in the header of the documents to "Skatteforvaltningen (the Danish Customs and Tax Administration)".

6. Permission is also sought to rely, in support of the Name Change Application, on the expert report of Dr Frederik Waage, an associate professor of law at the University of Southern Denmark (the "**Expert Permission Application**"). This expert report addresses the legal effect of the Claimant's name change under Danish law.

7. For convenience and to minimise the amendments required, it is proposed to continue to define the Claimant as "**SKAT**" throughout the English proceedings (save for this witness statement, in the interests of clarity).

**Background**

8. Under Danish law, a Danish company is obliged to withhold and pay to the Claimant as withholding tax ("**WHT**") 27% of any dividend which it pays to shareholders. Certain foreign shareholders are entitled, under Danish law, to a refund of the withheld tax if they beneficially owned the shares and beneficially received the dividend (net of WHT) in respect of those shares on the relevant dates.

9. Between August 2012 and July 2015, the Claimant received numerous applications for the refund of WHT, as set out in Schedule 1 to the Particulars of Claim (the "**WHT Applications**"). The WHT Applications were principally made by

2

102771300.1\JA22

English-based agents ostensibly on behalf of US pension funds and certain entities in Malaysia, UK or Luxembourg (the "**WHT Applicants**").

10. The tax reclaim agents completed a form specifying that the application was made on behalf of the "beneficial owner" of the shares in respect of which a refund of dividend WHT was sought. The WHT Applications were purportedly supported by credit advice notes ("**Credit Advice Notes**") from principally English custodians that stated that the relevant WHT Applicant owned a specific number of shares in a specific Danish company from whom specific dividends net of withholding tax ("**WHT**") had been received.

11. The premise of the WHT Applications was that they were genuine applications to reclaim WHT withheld upon payment of dividends to the shareholders in a Danish company. By each WHT Application, the Claimant alleges that the "**Alleged Fraud Defendants**" made (or assisted in or procured the making of, or were part of a conspiracy that involved the making of) a number of representations, including that the applicant in question beneficially owned the shares and had beneficially received the dividend (net of WHT deducted) in respect of those shares on the relevant dates, and that the applications were genuine (i.e. were made with an honest belief in the facts stated in them) (the "**WHT Representations**").

12. The Claimant alleges that the Alleged Fraud Defendants knew that the WHT Representations were false (or they were reckless as to whether they were true or false). The persons on whose behalf the WHT Applications were purportedly made (the "**WHT Applicants**") did not own the shares in question (beneficially or otherwise) and/or had not received the dividends on the relevant dates (beneficially or otherwise) and/or the Danish company had not withheld tax in respect of such dividend. They were therefore never entitled to any refund of WHT.

13. The Claimant alleges that WHT Applications were made as part of a fraudulent scheme (or schemes) by which the Alleged Fraud Defendants: (i) identified or procured or assisted in the formation of seemingly eligible applicants for WHT refunds; (ii) manufactured fictitious and/or sham transactions and/or carried out illegitimate trading for the purpose of facilitating WHT Applications; (iii) made or procured or assisted in the making of the WHT Applications, including the WHT Representations; and (iv) dealt with the sums paid by the Claimant in reliance on said representations in such a way as to conceal and/or launder and/or distribute the proceeds of the WHT Applications (the "**WHT Scheme**").

14. In reliance on the WHT Representations, the Claimant accepted the WHT Applications and, as a result, paid out approximately DKK12.665 billion (c. £1.5 billion) to the agents which had made the WHT Applications. The majority of that

3

money (c. £1 billion) was paid to bank accounts in England. Approximately £800 million passed through Solo Capital Partners LLP ("**SCP**"), now in special administration..

15. The lion's share of the money paid out by the Claimant was ultimately received by the Alleged Fraud Defendants (not the purported WHT Applicants), through a complex web of transactions, which included the extensive use of offshore vehicles. The Claimant infers that the intention of such transactions was to launder the proceeds of the monies, which the Alleged Fraud Defendants had deceived the Claimant into paying out, and to share them amongst themselves.

16. The primary individual responsible for the fraudulent scheme (or the primary fraudulent scheme) was Mr Sanjay Shah and entities controlled by him (collectively, the "**Shah Companies**"), principally:

16.1 SCP and related companies including Telesto Markets LLP ("**Telesto**", in administration), Old Park Lane Capital Limited ("**Old Park Lane**", in administration), West Point Derivatives Limited ("**West Point**", in administration), Solo Group (Holdings) Limited (in administration), Solo Capital Limited (in liquidation) and AESA S.À.R.L. (collectively, the "**Solo Group Companies**"); and

16.2 Elysium Global Limited ("**Elysium Global**") and related companies including Elysium Global (UK) Limited, Elysium Global (Dubai) Limited, Ganymede Cayman Limited, Hooloomooloo Holdings Limited, Elysium Global Trading Limited, Araya Holdings Limited, Trillium Holdings (BVI) Limited, Honey Jersey Limited, Trixor Holdings One Limited, Treefrog Capital Limited (formerly Arche Cayman Limited) and FGC Elysium Holdings Limited (collectively, the "**Elysium Companies**").

17. The other Alleged Fraud Defendants were joint tortfeasors and/or co-conspirators with Mr Shah and the Shah Companies and/or each other.

18. The Claimant brings its claims in English, alternatively Danish law. In respect of the Alleged Fraud Defendants, the claims are based on their dishonest participation in the WHT Representations and/or the WHT Scheme and/or their receipt of proceeds of the fraud.

19. Further, the Claimant claims against the "**Non-Fraud Defendants**" in respect of their negligent participation in the WHT Scheme and/or their unjust receipt of the proceeds of the fraud.

**Procedural chronology**

20. The wrongdoing alleged arises from a large international conspiracy (or conspiracies), where the Alleged Fraud Defendants took elaborate steps to try to

4

conceal their wrongdoing, including by routing payments through a network of offshore shell companies. Inevitably in such a case, the Claimant does not yet know all the details of the fraud or indeed necessarily all the participants. It has discovered (and will continue to discover) more as a result of disclosure from the Defendants.

21. This has led to the Claimant commencing a number of claims[1] in the Commercial Court (all of which have been consolidated) as the identity of participants in the fraud has become clear:

21.1 a first claim was issued on 4 May 2018 against 69 Defendants (CL-2018-000297) (the "**First Claim**") (pages 1-25 of "JRF9");

21.2 a second claim was issued on 15 June 2018 against 25 Defendants (CL-2018-000404) (the "**Second Claim**") (pages 26-36 of "JRF9");

21.3 a third claim was issued on 11 September 2018 against 8 Defendants (CL-2018-000590) (the "**Third Claim**") (pages 37-41 of "JRF9").

22. All three claims have been consolidated by Orders of Mr Justice Jacobs and Mrs Justice Cockerill dated 27 June 2018 (pages 42-47 of "JRF9") and 12 October 2018 (pages 48-51 of "JRF9") respectively.

23. In total, the Claimant has brought claims against 98 Defendants.[2] Of these:

23.1 the Claimant's claim has lapsed unserved against two corporate Defendants who are no longer in existence,[3] and one pension plan Defendant which is being sued in the United States instead;[4]

23.2 default judgment has been obtained against 6 Defendants (namely Solo Capital Limited (24th Defendant in the First Claim), Koi Associates Limited (67th Defendant in the First Claim), Syntax GIS Ltd (68th Defendant in the First Claim and 22nd Defendant in the Second Claim), Polaris Capital Limited (4th Defendant in the Third Claim), Polaris Capital (One) Limited (5th Defendant in the Third Claim and Elysium Global (UK) Limited (17th Defendant in the First Claim));

---

[1] This was done for limitation purposes. The Claimant's primary case is English law governs the claims, alternatively Danish law. There was no issue with the English limitation period but Danish law has a shorter 3 year limitation period. To avoid any possible argument about when this expired, each of the claims was begun at the earliest opportunity based on the Claimant's knowledge of the identity of the wrongdoers at the relevant time.

[2] One Defendant ("Syntax") is party to the First Claim as a Non-Fraud Defendant and a party to the Second Claim as an Alleged Fraud Defendant (due to the discovery of new facts). The same applies to two further Defendants ("Indigo" and "Mr Horn"), which are parties to the Second and Third Claims as Non-Fraud Defendants and Alleged Fraud Defendants respectively. Further, the 31st and 32nd Defendants to the First Claim are the same legal entity (the 31st Defendant changed its name).

[3] Salgado Capital (the 62nd Defendant in the First Claim) and Fiveways Consultancy FZE (the 17th Defendant in the Second Claim).

[4] Roxy Ventures LLC Solo 401k Plan (the 14th Defendant in the Second Claim).

5

102771300.1\JA22

23.3 proceedings are stayed as against 6 of the English Solo Group Companies in the First Claim (namely Solo Capital Partners LLP (in Special Administration) (1st Defendant); Telesto Markets LLP (in Administration) (2nd Defendant); Old Park Lane Capital Limited (in Administration) (3rd Defendant); West Point Derivatives Limited (in Administration) (4th Defendant), Solo Group (Holdings) Limited (in administration) (15th Defendant) and Solo Group Services Limited (in administration) (16th Defendant);

23.4 proceedings are also stayed by agreement as against the 66th Defendant in the First Claim ("**Goal**"), with such stay due to expire on 1 May 2019 or pending further order of the Court;

23.5 one Defendant is challenging jurisdiction: North Channel Bank, the Thirty-Third Defendant to the First Claim;

23.6 by agreement, one Defendant has not yet served an acknowledgment of service: IPIS UK (Battersea London 1) Ltd (in liquidation), the Twenty-Third Defendant to the Second Claim;

23.7 as such, there are 80 active Defendants to the English proceedings.

24. Particulars of Claim common to all Defendants (the "**Generic POC**") were served on the principal Defendants on 12 September 2018. At the same time, my firm served schedules specific to the positions of the respective Defendants (and also the Solo Group Companies who, although now in administration, were central to the fraud).

25. Further Defendant-specific schedules (plus the Generic POC) have been served on a rolling basis between 12 September and 5 December 2018 with respect to the remaining Defendants. The different dates of service reflect the dates on which the relevant Defendants acknowledged service.

26. As at the date of this witness statement, only the following Defendants have filed defences:

26.1 Lindisfarne Partners LLP and Global Equities GmbH, the Second and Twenty-Fourth Defendants in the Second Claim respectively (on 7 November 2018);

26.2 Alba Brown and Alasdair Brown, the Seventh and the Sixteenth Defendants in the Second Claim respectively (on 8 November 2018); and

26.3 ED&F Man Capital Markets Limited, the Sixty-Ninth Defendant in the First Claim (on 13 December 2018).

**Claimant's Name Change**

27. On 1 July 2018, the Claimant changed its name in Danish from SKAT to Skatteforvaltningen.

28. The Claimant has obtained an Expert Report from Dr Frederik Waage, an associate professor of law at the University of Southern Denmark, (the "**Waage Report**"), which explains the background and impact of the name change under Danish law. The Waage Report is exhibited at pages 52-167 of "JRF9". The Claimant seeks permission to rely on the Waage Report as expert evidence under CPR r.35.4, for the reasons that: (a) the question as to the effect of the Claimant's change in name is one of Danish law; and (b) it is necessary for the Court to receive expert evidence on Danish law in order to determine the Name Change Application (alternatively, such expert evidence is reasonably required).

29. The key points from the Waage Report are as follows:

29.1 The entity formerly known as SKAT and now called Skatteforvaltningen is a Danish ministerial authority. It has separate legal personality and the capacity to bring money claims in its own name.

29.2 The Claimant changed its name on 1 July 2018. Skatteforvaltningen is the same legal entity as SKAT, and retains SKAT's former business registry number. There has been no change of identity or capacity.

29.3 All of the Claimant's rights (including the causes of action against the Defendants to the English proceedings), duties and obligations remain with the same legal entity i.e. the entity formerly called SKAT and now called Skatteforvaltningen.

29.4 Losses suffered or benefits lost by SKAT constitute losses suffered or benefits lost by Skatteforvaltningen as a matter of Danish law.

30. Further, I am informed by Kammeradvokaten Poul Schmith ("**KPS**") (the Claimant's Danish lawyers) that Skatteforvaltningen operates from the same business address as stated in the Claim Forms.

31. The name change of 1 July 2018 does, however, mean that the Claimant was mistakenly named in the Third Claim Form and the Particulars of Claim as "SKAT (the Danish Customs and Tax Administration)". Given the name change, the Claimant should have been named as "Skatteforvaltningen (the Danish Customs and Tax Administration)".

102771300.1\JA22

32. Similarly, although the Claimant was correctly named in the First and Second Claim Forms, the name change of 1 July 2018 means that the First and Second Claim Forms require amendment.

**The Claimant's Position**

33. The application to amend the First and Second Claim Forms is made under CPR r17.1(1) because there was no mistake as to the Claimant's name as at the time those claim forms were issued.

34. The application to amend the Third Claim Form and the Particulars of Claim is made under CPR r17.1(2)(b) in so far as the relevant limitation period has not expired. The issue of limitation was addressed in paragraphs 239 to 244 of my First Affidavit, (pages 168-171 of "JRF9") and paragraphs 61-66 of my Seventh Affidavit (pages 172-174 of "JRF9"). To briefly summarise the position:

34.1 Under English law, there is no question of the relevant limitation having expired for any of the Defendants to the Third Claim, with the possible exception of some of the claims against Mr Horn (15th Defendant in the Second Claim and the 2nd Defendant in the Third Claim) based on SCP Credit Advice Notes signed in 2012. However, even then the basic 6-year limitation period would plainly be extended under s32(1)(a) of the Limitation Act 1980 because the claim against Mr Horn in deceit did not and could not have been discovered with reasonable diligence more than 6 years ago.

34.2 So far as Danish law is concerned, the Claimant did not (and should not have) become aware of the existence of its claims against any of the Defendants to the Third Claim more than 3 years ago. Rather, the Claimant did not become aware of the involvement of such Defendants in the fraud alleged until 2018. This was explained for Mr Horn (and therefore for Indigo Global Partners Limited) in my Seventh Affidavit paragraphs 64-65 (pages 173-174 "JRF9"). For the other Defendants to the Third Claim, the Claimant did not discover their identity or involvement in the fraud until preparing the Particulars of Claim over the summer of 2018. For example, the Claimant was not aware that Messrs Knott and Hoogewerf played a role in the fraud until it discovered that they had each received €2.76 million payments from Sanjay Shah through Varengold Bank (pages 175-180 "JRF9"). The Claimant did not receive these bank statements until spring 2018 and the fact of the relevant payments was not discovered until the summer of 2018 once preparing for the Particulars of Claim.

34.3 The position with respect to the Defendants to the First and Second Claims is set out in paragraphs 239 to 244 of my First Affidavit (pages 169-171 "JRF9"). Again, the English limitation period cannot have expired until 6 years from the date of the

8

102771300.1\JA22

earliest payments by the Claimant subject (in the cases of claims in fraud) to postponement of the limitation period under s32(1)(a) of the Limitation Act 1980.

34.4 So far as Danish law is concerned, I repeat the substance of my First Affidavit at paragraph 242 (page 170 "JRF9"). I note that in any event none of the defendants would be prejudiced (so far as the Danish law claims are concerned) by permitting an amendment to the Claimant's name because any such amendment will only take effect from the date of the amendment and will not relate back to the date of the issue. As such, no Danish law limitation defence is or could be affected by permitting the name change.

35. Alternatively, the Claimant relies on CPR r17.4(3) with respect to the amendments to the Third Claim Form and the Particulars of Claim.

36. The incorrect name of the Claimant was the result of a genuine error by this firm and counsel, who were not aware of the name change at the dates on which the Third Claim Form was issued and the Particulars of Claim were finalised. Had the English legal team appreciated that the Claimant's name had changed, the Third Claim Form and the Particulars of Claim would have included the correct name of the Claimant.

37. There was also a genuine error on the part of KPS, who were aware of the name change by September 2018 but did not appreciate that it needed to be reflected in the statements of case because they knew that the name change did not affect the legal identity of the Claimant, or the capacity in which it brings the claims. Therefore, KPS did not inform the Claimant's English legal team about the change until a phone call on 5 October 2018. If KPS had appreciated the significance of the name change, it would have informed the English legal team sooner.

38. For the avoidance of doubt, there was no deliberate decision to continue the claim in the name of the Claimant (notwithstanding the name change) by any of the participating lawyers at this firm, counsel, KPS or the Claimant.

39. The failure to change the name in the Third Claim Form and the Particulars of Claim was therefore the result of a genuine mistake.

40. The mistake was not one which would cause reasonable doubt as to the identity of the Claimant. Given the context of the case, there is only one possible claimant: the Danish tax authority to whom the WHT Applications were made and by whom the subsequent payments were made. The claimant has always been known in English (and continues to be known) as "The Danish Customs and Tax Administration". The Danish name for the ministerial authority has now changed but, as explained above, it remains the same legal entity, it shares the same business registry number, and the new name is similar. No Defendant could have

9

been misled about the identity of the claimant and none of the Defendants who have filed defences to date have been so misled.

41. The amendment is, in effect, of the same kind as the amendments to the name of the Forty-First and Fourth Defendants, as ordered by Mr Justice Jacobs and Mrs Justice Cockerill by Orders dated 13 July 2018 and 12 October 2018 respectively (exhibited at pages 181-183 and 48-51 of "JRF9").

42. Since being informed of the name change by KPS on 5 October 2018, steps have been taken to obtain the Waage Report. The substance of the Waage Report was only finalised on 20 December 2018, shortly before the Christmas vacation. The relevant expert declarations and other matters required by CPR Part 35 were added on 14 February 2019 in order to ensure that the Waage Report was compliant with the CPR.

43. For the reasons set out above, an order is sought that the Claimant has permission to amend the Claim Forms in the First, Second and Third Claims and the Particulars of Claim. Drafts of the proposed amendments to each of those documents are exhibited at 184-187, 188-191, 192-195, and 196 respectively.[5] As can be seen, the only change which is sought to be made is to the name of the Claimant.

44. Finally, I note that the fact that the Claimant has obtained default judgment against the Defendants identified in paragraph 23.2 above is not a bar to it seeking to change the name of the Claimant for the purposes of the proceedings as a whole. This issue will be addressed further in legal submissions.

**The Defendants' Positions**

45. On 8 January 2019, Pinsent Masons wrote to all of the Defendants in the English proceedings of the Claimant's intention to make the Name Change Application.[6] A copy of that letter is exhibited at pages 199-207 of "JRF9". For the avoidance of doubt, this letter did not canvass the Defendants' views on the Expert Permission Application.

46. Pinsent Masons has received the following responses from the Defendants to our letter:

---

[5] The Draft Amended Particulars of Claim only requires amendments to the first page of the Generic POC, which is all that is exhibited.
[6] With the following exceptions: (i) Janes Solicitors came on the record for Usha Shah (36th Defendant in the First Claim) on 21 January 2019 and were sent a copy of the letter by email on 29 January 2018 (pages 197-198 of "JRF9"), a copy of the letter having previously been sent to Usha Shah's former solicitors on 8 January 2019 (pages 199-207 of "JRF9"); (ii) KPMG, liquidators for Koi Associates Limited (67th Defendant in the First Claim) were sent a copy of the letter on 31 January 2018, a copy of the letter having previously been sent to the solicitors acting for the liquidators on 8 January 2019 (pages 199-207 of "JRF9"); and (iii) the 2 Defendants against whom the claim has lapsed and the Defendant being sued in the United States (all referred to in 23.1 above) were not sent a copy of the letter.

102771300.1\JA22

46.1  BAC Solicitors acting on behalf of the 40th Defendant in the First Claim has not responded, nor has it responded to further attempts by Pinsent Masons to clarify its client's position by letter on 6 February 2019 and email on 14 February 2019 (pages 208-209 of "JRF9").

46.2  Bark & Co acting on behalf of the 10th, 37th, 52nd 60th and 61st Defendants in the First Claim and the 5th, 6th, 10th, 11th, 12th, and 13th Defendants in the Second Claim and the 3rd Defendant in the Third Claim responded on 25 January 2019 and confirmed it will not oppose the Name Change Application (page 210 of "JRF9").

46.3  BDB Pitmans LLP acting on behalf of the 33rd Defendant in the First Claim responded on 6 February 2019 and confirmed it does not oppose the Name Change Application. This is made without prejudice to the 33rd Defendant's application to challenge jursidiction and should not be construed as the 33rd Defendant submitting to the jurisdiction of the English court and/or entering any appearance in the action (page 211 of "JRF9").

46.4  Bird & Bird LLP acting on behalf of the 29th Defendant in the First Claim responded on 22 January 2019 and confirmed it will not oppose the Name Change Application but reserved its client's right to plead that the Claimant is not properly entitled to pursue these claims and/or that they are statute barred (page 212 of "JRF9").

46.5  Brown Rudnick LLP acting on behalf of the 11th, 18th, 19th, 20th, 23rd and 42nd Defendants in the First Claim responded on 13 February 2019 and stated that it has been unable to deal with these matters pending resolution of outstanding funding issues (page 213 of "JRF9").

46.6  Bryne & Partners LLP acting on behalf of the 8th, 13th, 43rd, 58th and 59th Defendants in the First Claim responded on 22 January 2019 and confirmed it will not oppose the Name Change Application (page 214 of "JRF9").

46.7  CGS Legal acting on behalf of the 6th, 9th, 30th, 31st, 32nd, 34th, 35th, 36th, 38th, 44th, 45th, 46th, 47th, 48th, 49th, 50th, 51st, 53rd, 54th, 55th, 56th, 57th and 63rd Defendants in the First Claim, the 4th, 18th, 19th and 21st Defendants in the Second Claim and the 8th Defendant in the Third Claim responded on 15 February 2019 and consented to the Name Change Application on the basis that costs are reserved and its right to revisit this matter is also reserved when it is in a position to instruct a Danish law expert (page 215 of "JRF9").

46.8  DWF LLP acting on behalf of the 15th, 20th and 25th Defendants in the Second Claim and the 2nd Defendant in the Third Claim responded on 22 January 2019

and confirmed they are seeking advice on the issue and will respond by 8 March 2019 (pages 216-217 of "JRF9").

46.9   EBL Miller Rosenfalck acting on behalf of the 8th Defendant in the Second Claim responded on 6 February 2019 and confirmed that it will not oppose the Name Change Application (page 218 of "JRF9").

46.10  Fieldfisher LLP acting on behalf of the 39th Defendant in the First Claim responded on 23 January 2019 and confirmed it would not oppose the Name Change Application but reserves its client's right to challenge the Claimant's right to continue the proceedings following the name change (pages 219-220 of "JRF9").

46.11  Gowling WLG (UK) LLP acting on behalf of the 24th Defendant in the Second Claim responded on 8 February 2019 and confirmed it is prepared to consent to the name change amendments on the basis that the Claimant pays the reasonable costs of the necessary amendments occasioned and provided that such payment is provided forthwith. Such consent is provided without prejudice to any of their client's rights to plead any defence in respect of the locus of the Claimant (pages 221-222 of "JRF9").

46.12  Howard Kennedy LLP acting on behalf of the 64th and 65th Defendants in the First Claim and the 9th Defendant in the Second Claim responded on 22 January 2019 and confirmed it will not oppose the Name Change Application (page 223 of "JRF9").

46.13  Janes Solicitors acting on behalf of the 36th Defendant in the First Claim responded on 6 and 8 February 2019 and confirmed at this stage they do not propose consenting to the Order and are seeking the opinion of Counsel (pages 224-225 of "JRF9").

46.14  Keystone Law acting on behalf of the 1st Defendant in the Second Claim and the 1st Defendant in the Third Claim responded on 23 January 2019 and confirmed it will not oppose the Name Change Application (pages 226-227 of "JRF9").

46.15  Keystone Law acting on behalf of the 2nd Defendant in the Second Claim responded on 14 January 2019 and confirmed it will not object to the Name Change Application (page 228 of "JRF9").

46.16  Kingsley Napley LLP acting on behalf of the 66th Defendant in the First Claim responded on 16 January 2019 and confirmed that they consented to the Name Change Application on the basis that the Claimant agrees to pay their client's costs of an occasioned by the amendment (page 229 of "JRF9").

46.17   McCarthy Denning acting on behalf of the 1st, 2nd, 3rd, 4th, 15th and 16th Defendants in the First Claim responded on 9 February 2019 and confirmed they had no objection to the name change (page 230 of "JRF9").

46.18   Moon Beever Solicitors acting on behalf of the 23rd Defendant in the Second Claim has not responded, nor has it responded to further attempts by Pinsent Masons to clarify its client's position by letter on 6 February 2019 and email on 14 February 2019 (pages 231-232 of "JRF9").

46.19   Morrison Foerster (UK) LLP acting on behalf of 5th Defendant in the First Claim responded on 23 January 2019 and confirmed it will not oppose the Name Change Application but reserves its client's right to challenge at a later date the Claimant's right to continue the proceedings following the name change (pages 233-234 of "JRF9").

46.20   Nicholas Collins Ltd acting on behalf of the 7th and 16th Defendants in the Second Claim responded on 6 February 2019 and confirmed its clients' consent to the Name Change Application (page 235 of "JRF9").

46.21   Reed Smith LLP acting on behalf of the 41st Defendant in the First Claim responded on 23 January 2019 and confirmed it does not oppose the Name Change Application but reserves its client's rights in this regarding including but not limited to her rights to make any future challenge and to seek any associated costs (pages 236-238 of "JRF9").

46.22   Reed Smith LLP acting on behalf of the 6th and 7th Defendants in the Third Claim responded on 12 February 2019 seeking further information about a number of issues and expressly reserving their clients' rights in relation to the name change issue (pages 238A-238B of "JRF9"). Pinsent Masons addressed all the points raised by Reed Smith LLP by letter dated 15 February 2019 (pages 238C-238D of "JRF9").

46.23   Rosenblatt Limited acting on behalf of the 69th Defendant in the First Claim responded on 23 January 2019 and confirmed it will consent to the Name Change Application subject to the Claimant paying the costs of the amendment and reserves its right to require the Claimant to prove that it is the legal entity entitled to bring the claims (page 239 of "JRF9").

46.24   Stephenson Harwood acting on behalf of the 3rd Defendant in the Second Claim responded on 22 January 2019 confirming that it will not oppose the Name Change Application but reserving its client's rights including but not limited to the right to plead that the Claimant is not properly entitled to pursue these claims and/or that they are statute barred (pages 240-241 of "JRF9").

46.25   Stewarts Law LLP acting on behalf of the 7th, 12th, 14th, 21st, 22nd, 25th, 26th, 27th and 28th Defendants in the First Claim responded on 22 January 2019 confirming it will not oppose the Name Change Application (pages 242-243 of "JRF9").

46.26   The 6 Defendants against whom default judgment has been obtained (see paragraph 23.2 above) have not responded to my firm's letter and I do not expect them to do so.

47.   No Defendant has expressly objected to the Name Change Application or the proposed amendments to date. However, as set out above in paragraph 46.8, three of the Defendants (Messrs Horn, Rajen Shah and Dhorajiwala) have requested further time until 8 March 2019 to seek advice and to consider their position. Further, Ms Usha Shah is seeking the opinion of counsel and Messrs Knott and Hoogewerf have reserved their position pending answers to the questions in their letter dated 12 February 2019 (which my firm answered on 15 February 2019): see paragraph 46.13 and 46.22 above. The Claimant therefore requests that the Name Change Application and the Expert Permission Application be listed after 8 March 2019 to enable those Defendants to consider their position further.

48.   As to the position on costs:

48.1   The Claimant accepts that it should pay a contribution towards the reasonable costs of any consequential amendments to defences which have already been filed (i.e. those of Global Equities GmbH, Lindisfarne Partners LLP, Alba Brown and Alasdair Brown, and ED&F Man Capital Markets Limited). Lindisfarne Partners LLP has adopted a pragmatic and sensible approach of not making such amendments for now (but will do so when it comes to amend its defence for other reasons) (page 228 of "JRF9").

48.2   Further, the Claimant accepts that it should pay a contribution towards the reasonable costs of the Defendants in the Third Claim in considering the Name Change Application and the Expert Permission Application, because it was due to an error on the Claimant's part that the incorrect name was used at the time of making the Third Claim. For the avoidance of doubt, this acceptance does not extend to paying the costs of any such defendant opposing the Name Change Application or the Expert Permission Application, which would be unreasonable and opportunistic.

48.3   However, the Claimant denies that it should pay the costs of the Defendants in the First and Second Claim (other than those identified in paragraph 48.1 above) in circumstances where:

48.3.1 they have not filed any Defence which needs consequential amendment; and

48.3.2 the Claimant was not at fault with respect to the First and Second Claim Forms (it having used the correct name as at the date that those claims were made).

48.4 Accordingly, the proper order in respect of the the Defendants in the First and Second Claim (other than those identified in paragraph 48.1 above) should be for costs in the case, alternatively costs reserved (so as to spare the need for attendance by those defendants in respect of this application).

49. The Claimant therefore respectfully requests that the Court make the order in the terms sought.

**STATEMENT OF TRUTH**

I believe that the facts stated in this witness statement are true.

Signed _____

Jonathan Robert Fortnam, Partner in Pinsent Masons LLP, solicitors to the Claimant/Applicant

Date:   15 February 2019

**[Pages Intentionally Omitted for Length. To be Provided at the Court's Request.]**