UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re<br><br>CUSTOMS AND TAX ADMINISTRATION OF THE KINGDOM OF DENMARK (SKATTEFORVALTNINGEN) TAX REFUND SCHEME LITIGATION<br><br>This document relates to: 18-cv-07828; 19-cv-01785; 19-cv-01867; 19-cv-01893; 19-cv-01781; 19-cv-01783; 19-cv-01866; 19-cv-01895; 19-cv-01794; 19-cv-01865; 19-cv-01904; 19-cv-01798; 19-cv-01869; 19-cv-01922; 19-cv-01800; 19-cv-01788; 19-cv-01870; 18-cv-07827; 19-cv-01791; 19-cv-01792; 19-cv-01928; 19-cv-01926; 19-cv-01868; 18-cv-07824; 19-cv-01929; 19-cv-01803; 19-cv-01806; 19-cv-01906; 19-cv-01801; 19-cv-01894; 19-cv-01808; 19-cv-01810; 19-cv-01809; 18-cv-04833; 19-cv-01911; 19-cv-01898; 19-cv-01812; 19-cv-01896; 19-cv-01871; 19-cv-01813; 19-cv-01930; 18-cv-07829; 18-cv-04434; 19-cv-01815; 19-cv-01818; 19-cv-01931; 19-cv-01918; 19-cv-01873; 19-cv-01924; 19-cv-10713; 21-cv-05339. | MASTER DOCKET<br><br>18-md-2865 (LAK) |

**PLAINTIFF SKATTEFORVALTNINGEN'S
RESPONSE TO DEFENDANTS' OFFERS OF PROOF
<u>REGARDING AN ADVICE OF COUNSEL DEFENSE</u>**

HUGHES HUBBARD & REED LLP
William R. Maguire
Marc A. Weinstein
Neil J. Oxford
Dustin P. Smith
Gregory C. Farrell
One Battery Park Plaza
New York, New York 10004
(212) 837-6000

*Counsel for Plaintiff Skatteforvaltningen
(Customs and Tax Administration of the
Kingdom of Denmark)*

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT...................................................................................................................................3

    I.     The Danish legal opinions prepared for other parties should be excluded as irrelevant and unfairly prejudicial............................................................................4

    II.    The evidence of attorney involvement in prior schemes against Germany and Belgium should be excluded as irrelevant and unfairly prejudicial....................8

    III.   Defendants should be precluded from arguing that Kaye Scholer's involvement "blessed" their Danish dividend arbitrage scheme. ...........................................10

CONCLUSION............................................................................................................................12

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Fletcher Int'l, Ltd.*, No. 12-12796 (REG), 2014 WL 2619690 (Bankr. S.D.N.Y. June 11, 2014) ................................................................................................. 10

*Int'l Bhd. of Elec. Workers, Loc. 90 v. Nat'l Elec. Contractors Ass'n*, No. 3:06cv2 (SRU), 2008 WL 918481 (D. Conn. Mar. 31, 2008) ................................................... 10

*Markowski v. Sec. & Exch. Comm'n*, 34 F.3d 99 (2d Cir. 1994) ........................................ 3

*Sec. & Exch. Comm'n v. Enters. Sols., Inc.*, 142 F. Supp.2d 561 (S.D.N.Y. 2001) .......... 10

*Sec. & Exch. Comm'n v. Lek Sec. Corp.*, No. 17CV1789 (DLC), 2019 WL 5703944 (S.D.N.Y. Nov. 5, 2019) ................................................................................... 4

*Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666 (S.D.N.Y. 2013) ................. 4, 6, 8

*United States v. Bankman-Fried*, No. S5 22-cr-0673 (LAK), 2024 WL 477043 (S.D.N.Y. Feb. 7, 2024) ................................................................................................. 9

*United States v. King*, 560 F.2d 122 (2d Cir. 1977) ........................................................... 7

*United States v. Ray*, No. 20-cr-110 (LJL), 2022 WL 1004961 (S.D.N.Y. Apr. 1, 2022) ......................................................................................................................... 4, 7

Pursuant to Pretrial Order No. 42 (ECF No. 1172), Plaintiff Skatteforvaltningen ("SKAT") respectfully submits this response to (i) Defendant Robert Klugman's Offer of Proof Regarding Involvement and Advice of Counsel ("Klugman Offer," ECF No. 1202), (ii) Defendants Richard Markowitz and John van Merkensteijn's Offer of Proof Regarding Advice of Counsel ("Markowitz Offer," ECF No. 1204), and (iii) Defendant Michael Ben-Jacob's Response to Pretrial Order No. 42 Ordering Defendants to File an Offer of Proof as to the Advice of Counsel Defense ("Ben-Jacob Resp.," ECF No. 1200), and in further support of its Motion *in Limine* to Preclude Defendants' Assertion of an Advice of Counsel Defense ("SKAT's Mot.," ECF Nos. 1123-1125).

## PRELIMINARY STATEMENT

SKAT moved to preclude Defendants from arguing at trial that they relied on the advice of counsel in representing to SKAT that their pension plans owned Danish shares on which they received dividends, net of withholding tax, or that they took comfort in making such representations from Kaye Scholer's or any other firm's involvement in or advice concerning other aspects of their purported dividend arbitrage scheme. Defendants' offers of proof make clear they intend to do exactly that, despite the fact that no attorney ever advised Defendants that their purported trading in Danish shares entitled the plans to tax refunds under Danish law.

The Court should preclude Defendants from offering at trial the Danish law opinion that Hannes Snellman issued not to them, but to Solo Capital. While Defendants disclaim that they are asserting an advice of counsel defense, they nevertheless proffer Hannes Snellman's opinion and intend to argue that they relied on it in good faith in submitting the refund claims. But as a matter of law, Defendants cannot have relied in good faith on legal advice provided to Solo Capital, particularly given that they have no knowledge of the information Solo provided to its attorneys that formed the basis for the opinion. In arguing otherwise, Defendants seek all the

benefits of an advice of counsel defense while sidestepping the burden of establishing its elements. In any event, the Hannes Snellman opinion relates to transactions so materially different from the ones that Defendants entered that it could only ever serve to mislead the jury.

The Danish legal opinion Bech-Bruun issued to North Channel Bank should be excluded from trial for the same reasons. Clinging to any Danish law advice he can find, Defendant Klugman points to Bech-Bruun's opinion advising North Channel Bank (wrongly, it turned out) that the bank should not be subject to Danish criminal or civil liability for acting as a custodian in a similar scheme. That opinion is irrelevant to Klugman's purported good faith in submitting the refund claims to SKAT. Setting aside that Bech-Bruun never gave Klugman any advice and that none of Klugman's fraudulent refund claims involved North Channel Bank, the opinion does not even address whether the pension plan would be entitled to a tax refund under Danish law.

The Court should likewise preclude Defendants from presenting the German and Belgian law advice provided by Norton Rose and Freshfields, respectively, and from testifying or arguing to the jury that such advice somehow evidences their good faith in representing to SKAT that they were entitled to tax refunds under Danish law. While Defendants' and Ben-Jacob's participation in or knowledge of other dividend arbitrage schemes may have some limited relevance at trial, the Court should preclude Defendants from offering the German and Belgian law legal advice as irrelevant and unfairly prejudicial. Nor is work of the law firms Arthur Cox or Crowell & Moring on Defendants' Broadgate scheme involving German refund claims of any relevance to whether the Defendants acted in good faith in submitting refund claims to Denmark.

Defendants also should be precluded from presenting advice on U.S. law issues that are not relevant to SKAT's claims and arguing that the involvement of their U.S. lawyers at Kaye Scholer in submitting the refund claims or the U.S. law advice Kaye Scholer provided

2

concerning other issues evidences their good faith in representing to SKAT that they owned Danish shares. No Kaye Scholer attorney ever advised Defendants that they owned shares or were entitled to tax refunds under Danish law. To be sure, much of the evidence Defendants proffer may be relevant to SKAT's claims against Defendants and Ben-Jacob, but Defendants should not be permitted to make the prejudicial and misleading argument that Kaye Scholer's advice concerning issues collateral to their representations of ownership gave them comfort in making those representations.

Finally, SKAT did not move to preclude Ben-Jacob from offering such evidence at trial. To the extent Ben-Jacob's proffered testimony about what the other Defendants (or their former partner non-party Jerome Lhote) told him about Danish law or, for that matter, any other advice they purportedly received is admissible, SKAT agrees with Ben-Jacob that the Court should give an appropriate limiting instruction to the jury that they should not consider such evidence in determining the other Defendants' liability.[1]

## ARGUMENT

Defendants admittedly cannot meet the requirements for a so-called "formal" advice of counsel defense with respect to their representations of share ownership and dividend receipt in the tax refund claims. (Defs.' Mem. of Law in Opp. at 2, ECF No. 1161 (arguing SKAT's motion is "moot because Defendants are not asserting the advice of counsel defense that SKAT is attempting to preclude").) For such a defense, Defendants would need "to show that [they] made complete disclosure to counsel, sought advice as to the legality of [their] conduct, received advice that [their] conduct was legal, and relied on that advice in good faith." *Markowski v. Sec. & Exch. Comm'n*, 34 F.3d 99, 105 (2d Cir. 1994) (citation omitted). No attorney ever advised

---

1. See Ben-Jacob Resp., at 5.

any Defendant that their purported trading of Danish shares entitled them to refunds of dividend withholding tax under Danish law.

Despite disclaiming that they are asserting the defense (because there is no evidentiary basis for it), Defendants nevertheless seek "all of the essential benefits" of the defense "without having to bear the burden of proving any of the elements." *Sec. & Exch. Comm'n v. Tourre*, 950 F. Supp. 2d 666, 684 (S.D.N.Y. 2013). But absent an advice of counsel defense, the evidence Defendants proffer is irrelevant to their good faith in representing to SKAT that the plans owned Danish shares on which they received dividends and their proffered arguments to the contrary are likely to confuse and mislead the jury.

I.  **The Danish legal opinions prepared for other parties should be excluded as irrelevant and unfairly prejudicial.**

As SKAT explained in its motion, Defendants cannot argue they relied on the legal opinion Hannes Snellman prepared for Solo Capital because "legal advice given to another does not establish good faith as a matter of law." (SKAT's Mot. at 3-4 (quoting *Sec. & Exch. Comm'n v. Lek Sec. Corp.*, No. 17cv1789 (DLC), 2019 WL 5703944, at *4 (S.D.N.Y. Nov. 5, 2019)).)[2] The opinion itself states that it was "rendered solely for [Solo's] benefit and may only be relied upon by [Solo] in the very matter and context specified" therein. (Markowitz Offer, Ex. 1 at ¶ 9; *see also* Markowitz Offer at ¶¶ 11-16; Klugman Offer at 9 & Ex. 24.)

---

2. Ben-Jacob's response to the Court's Pretrial Order No. 42 does not indicate that Ben-Jacob intends to offer the Hannes Snellman opinion as relevant to his good faith. (*See generally* Ben-Jacob Resp.) And he has previously argued that there is not "a single document suggesting that Ben-Jacob received or reviewed [that] opinion during the relevant 2012 to 2015 time period." (ECF No. 1044 at 5.) Thus, if as SKAT expects, Ben-Jacob intends to testify that he never saw it during the relevant period, the opinion cannot be relevant to his good faith. *Cf. United States v. Ray*, No. 20-cr-110 (LJL), 2022 WL 1004961, at *3 (S.D.N.Y. Apr. 1, 2022) (citing *United States v. King*, 560 F.2d 122, 132 (2d Cir. 1977)) ("There also must be a factual predicate to support that the defendant sought the advice of counsel before taking action.").

4

"Without knowing what information" Solo Capital "shared with [its] attorneys and what those attorneys said to their client[] in the context of privileged communications," Defendants "cannot assert that they relied in good faith on the fact that" Solo Capital "consulted counsel." *Lek Sec. Corp.*, 2019 WL 5703944, at *4. That the opinion's description of the transactions supposedly was consistent with what Defendants "understood" were the "characteristics" of the so-called "trading opportunity Solo presented" is no substitute for Defendants themselves seeking advice of counsel as to whether the plans' purported trading entitled them to tax refunds after a full disclosure to counsel. (Markowitz Offer at ¶ 12.)[3]

Further, as SKAT explained in its motion, the transactions described in the Hannes Snellman opinion do not even match Defendants' purported Danish trading. (*See* SKAT's Mot. at 4.) The "contemplated transactions" described in the opinion involve the pension plan purchasing shares before the "ex-dividend date" and selling them "[o]n or after the ex-dividend date," with both trades due to settle on the same date. (Markowitz Offer, Ex. 1 § 3; Klugman Offer, Ex. 24 § 3.) Not that the plan would purchase shares from a purported short seller, which would borrow the shares from the plan that was supposedly buying the shares in the first place. Further, none of Defendants' purported share purchases settled "on" the ex-dividend date; rather all of them supposedly settled after that date. And while the opinion notes that "[i]t is possible that in the period until sale, the Equities would be lent out under a stock loan" "to minimize

---

3. As SKAT explained in its motion, it is apparent from the Hannes Snellman opinion that Solo did not make a complete disclosure. (SKAT's Mot. at 4-5.) The opinion's conclusion that the hypothetical pension plan at issue would be entitled to a tax refund is premised on, among other things, that the plan "will obtain unconditional ownership" of the shares and "have full ownership rights over the" shares on the "Dividend Approval Date;" the shares "will be held by [the pension plan] through a custodian;" the plan will obtain "the right to receive the dividend declared on [the record date];" and "that the Danish Dividend represents a real dividend. . . which is passed on to [the pension plan] by the custodian." (Markowitz Offer, Ex. 1 § 4; Klugman Offer, Ex. 24 § 4.) As Defendants now all but admit, none of those assumptions were true. (Markowitz Offer at ¶ 9 (disclaiming knowledge "that the Solo transactions were circular and that no shares existed").)

5

financing costs," Defendants purported to always immediately lend the supposed shares to finance entirely the purported share purchase. (Markowitz Offer, Ex. 1 § 3.)

Moreover, Defendants could not have "understood," (Markowitz Offer at ¶ 12), that the opinion applied to their transactions with Solo because the opinion was expressly premised on a plan not being "legally obligated to pay any portion of the Danish Dividend to any person" and that the plan "will obtain unconditional ownership to the Equities and will have full ownership rights over the Equities on the Dividend Approval Date including the right to receive the dividend"—a requirement that, by Defendants' express agreements with Solo, their plans could not meet. (Markowitz Offer, Ex. 1 §§ 4, 7.1; Klugman Offer, Ex. 24 §§ 4, 7.1.)[4]

And Klugman's purported reliance on the legal opinion Bech-Bruun issued to North Channel Bank fares even worse.[5] That opinion likewise states that it "is addressed to NCB for the use and benefit of the NCB and may not be relied upon by any other person." (Klugman Offer, Ex. 25 at ¶ 8.) And it does not even contain any opinion on whether the plans would be entitled to a tax refund based on the transactions described therein. Rather, the opinion considered "solely . . . the existence of Danish tax liability for NCB, the civil law liability for a

---

[4]. As Defendants were aware, none of the plans met this requirement for at least two reasons. First, under their custody agreements with the Solo Custodians, "all right, title and interest" to any shares and dividends "automatically transferred to Solo upon receipt of those funds." (*See* Declaration of Marc A. Weinstein, dated October 7, 2024, Ex. 1 (Rebuttal Expert Report of Felicity Toube QC) ¶¶ 51-61, 66-67.) Thus, upon receipt, the plans were "legally obligated to pay" to Solo every refund (which was supposed to represent the "portion of the Danish Dividend" that had been withheld as tax). Second, under the plans' arrangements with Solo, which Defendants variously described as a contractual "fee" or as an agreed allocation under the plans' effective partnership with Solo, all the plans were "legally obligated to pay" at least two-thirds of the supposed "refunds" to Shah's offshore entity Ganymede Cayman Ltd. Moreover, Defendants operated many of the plans as agents for undisclosed partnerships with Defendants or Defendants' plans, so the plans in those partnerships were "legally obligated" to account to those partnerships for everything that the plans received, including any purported "refund" from SKAT, which, again, was supposed to represent the withheld "portion of the Danish Dividend."

[5]. Contrary to his offer of proof, Klugman did not identify Bech-Bruun's legal opinion in his answer to SKAT's interrogatory asking him to identify all the legal advice on which he purportedly relied. (Klugman Offer, Ex. 23 at 11-12.)

6

loss suffered by the Danish state for NCB and Danish criminal liability issues for NCB as a result of the transaction." (*Id.* at ¶ 2.)[6] It specifically provides that Bech-Bruun did not consider "the tax treatment in Denmark of other parties than NCB," *e.g.*, the pension plan, or "the liability issues of other parties than NCB." (*Id.* at ¶¶ 2.1.1 & 2.1.4.) Just the opposite, the opinion is premised on the pension plan having "obtained a tax opinion from Danish tax counsel confirming the [plan] . . . should be entitled to reclaim in full Danish withholding tax on dividends paid on the Equities." (*Id.* at ¶ 3.9.)

Klugman argues that it is "irrelevant" that he "was not a client of Bech-Bruun" because he is "not asserting an advice of counsel defense." (Klugman Offer at 10.) But setting aside for a moment that the opinion does not even address whether the pension plan would be entitled to a refund, "that is such a fine-grained distinction from a reliance on counsel defense," to the extent it even is a distinction, "that it would likely confuse the jury." *Tourre*, 950 F. Supp. 2d at 684.

Finally, Markowitz and van Merkensteijn assert that they intend to offer legal opinions Hannes Snellman issued in 2013 and 2014 to entities called Belador Advisors UK Limited and Pintal GP Limited "[t]o the extent SKAT intends to contend that defendants should have sought additional opinions from Hannes Snellman directed at them in particular[] or addressing other issues." (Markowitz Offer at ¶ 17.) But as an initial matter, Defendants proffer no evidence or testimony that they were even aware of these opinions before this litigation, much less any explanation as to how opinions addressed to these entities would bear on SKAT's argument that

---

6. The opinion's conclusion that North Channel Bank should not have any liability did not age well. In 2019, North Channel Bank pleaded guilty in a Danish court to criminal fraud and in 2023, the Danish Supreme Court held Bech-Bruun itself civilly liable to SKAT for issuing the opinion. To the extent that Klugman is permitted to introduce evidence of the Bech-Bruun opinion, SKAT reserves its right, as necessary to prevent the inaccurate jury perception that Klugman relied upon a legitimate legal opinion, to introduce evidence of the November 20, 2023 Danish Supreme Court decision finding Bech-Bruun liable to SKAT to the tune of DKK 400 million for issuing the opinion and North Channel Bank's 2019 guilty plea.

Defendants cannot rely on legal advice provided to others. And even if Defendants were aware of them previously, the opinions can have no bearing on Markowitz and van Merkensteijn's decision to participate in Solo's scheme because they were issued in 2013 and 2014, *i.e.*, after Defendants began submitting their fraudulent refund claims to SKAT in 2012. *See Ray*, 2022 WL 1004961, at *3 (S.D.N.Y. Apr. 1, 2022) (citation omitted) ("There also must be a factual predicate to support that the defendant sought the advice of counsel before taking action.").

## II. The evidence of attorney involvement in prior schemes against Germany and Belgium should be excluded as irrelevant and unfairly prejudicial.

Nor should the Court permit Defendants to argue to the jury that they acted in good faith in making the beneficial ownership representations to SKAT because they, Solo and others received legal advice concerning separate purported dividend arbitrage schemes directed at Germany and Belgium. (Markowitz Offer § V; Klugman Offer § II(A).) To be sure, limited evidence of Defendants' participation in and knowledge of these schemes may be relevant at trial. For instance, that certain of these previous schemes required Defendants to contribute substantial funds to purchase shares, in contrast to the Solo scheme that did not require Defendants to pay a dime, may bear on Defendants' scienter. But Defendants should not be permitted to argue to the jury that they relied on legal advice under German or Belgian law in submitting refund claims to Denmark.

For instance, that Defendants reviewed draft German law opinions prepared by Norton Rose for Solo Capital concerning the German Broadgate and Ezra schemes has no bearing on their supposed good faith in submitting their Danish refund claims to SKAT. (Markowitz Offer § V(B) & Exs. 48, 75; Klugman Offer at 5 & Ex. 1.)[7] These draft opinions discuss the German

---

[7] Markowitz and van Merkensteijn state that they relied on a 2011 draft German law opinion prepared by Norton Rose for Solo Capital, (Markowitz Offer § V(B)), while Klugman states that "he participated based upon" an

8

tax law implications of trading by an Irish investment fund and a U.S. non-profit organization, respectively. (Klugman Offer, Ex. 1 § 1; Markowitz Offer, Exs. 48 § 1, 75 § 1.1.) They have nothing to do with Defendants' representations to SKAT that they were entitled to tax refunds under Danish law. Defendants' proffered arguments to the contrary seeking to "emphasi[ze] the presence of counsel" in different dividend arbitrage schemes are "irrelevant, misleading, or both." *Tourre*, 950 F. Supp. 2d at 684.

For the same reasons, the Court should exclude Defendants' proffered evidence of the opinion that Freshfields provided to the investment group Duet Asset Management—which discussed the conduct of a dividend arbitrage scheme involving Belgian securities not at issue in this case and its consequences under inapplicable Belgian law. (*See* Markowitz Offer § V(C) & Exs. 76, 79-118; Klugman Offer at 5-6 & Exs. 10-18.)

And the evidence Defendants proffer of the involvement of Arthur Cox and Crowell & Moring several years earlier in the Broadgate dividend arbitrage scheme, again involving German shares, is even farther afield. The only role of these firms was in due diligence and negotiation of a letter agreement between Argre and Solo that focused on the economics of the parties' relationship. (*See, e.g.*, Markowitz Offer, Exs. 51-69; Klugman Offer at 5 & Exs. 2-9.) None of that has anything to do with whether Defendants acted in good faith in submitting refund claims to SKAT. Instead, Defendants seek to introduce such evidence solely to support their misleading argument that the involvement of attorneys in a separate German dividend arbitrage scheme is evidence of Defendants' good faith in submitting tax refund claims to SKAT.

---

earlier 2010 draft North Rose opinion, also addressed to Solo Capital. (Klugman Offer at 5 & Ex. 1.) But while Markowitz "recalls learning that" the Norton Rose opinion "was finalized" (Markowitz Offer at ¶ 105), none of the Defendants assert that they ever received or even attempted to obtain the final version of the opinion on which they claim to rely.

9

**III.    Defendants should be precluded from arguing that Kaye Scholer's involvement "blessed" their Danish dividend arbitrage scheme.**

The Court also should preclude Defendants from arguing to the jury that Kaye Scholer's involvement in and advice concerning their scheme evidences their good faith in making the beneficial ownership representations to SKAT.  Evidence "that an attorney was involved to a limited extent" "can pose . . . a significant risk of misleading the jury." (Pretrial Order No. 42 at 2.)  Such evidence can mislead the jury to "conclude mistakenly that the" attorney "must have implicitly or explicitly 'blessed' the legality of all aspects of a transaction," (*id.* (citation omitted)) or that "because lawyers were involved to some degree with one aspect of events, the defendant was entitled to conclude that he was acting within the law with respect to some other aspect of events." *United States v. Bankman-Fried*, No. S5 22-cr-0673 (LAK), 2024 WL 477043, at *3 (S.D.N.Y. Feb. 7, 2024).  And that "risk is heightened where, as here, the requirements of a 'formal advice-of-counsel' defense" are not met, (Pretrial Order No. 42 at 2), and "the proffered evidence is only collaterally related to the" conduct at issue "and is thus minimally probative." *Bankman-Fried*, 2024 WL 477043, at *3.

Defendants intend to suggest that misleading inference to the jury explicitly in arguing that Kaye Scholer's involvement in their scheme evidences their good faith in making the beneficial ownership representations to SKAT.  Defendants never received advice from Kaye Scholer (or any other firm) regarding their plans' entitlement to the tax refunds they claimed.  As Ben-Jacob testified, "[t]he general conclusion" Kaye Scholer "reached was that . . . [they] are not Danish lawyers and can't advise on Danish law matters." (Declaration of Marc A. Weinstein, dated Aug. 15, 2024, ECF No. 1124, Ex. 3 (Ben-Jacob Dep. Tr.) 154:14-155:20.)  And "as a matter of law," Kaye Scholer's "silence" on the issue "does not constitute legal advice, particularly where" Defendants "present[] no evidence that the actual facts were ever presented

10

to any lawyer or that any lawyer was asked to render an opinion." *In re Fletcher Int'l, Ltd.*, No. 12-12796 (REG), 2014 WL 2619690, at *4 (Bankr. S.D.N.Y. June 11, 2014).[8]

Thus, while some of Defendants' proffered evidence may otherwise be relevant, Ben-Jacob and other Kaye Scholer attorneys' so-called administrative support of the 2014 plans, (*see* Markowitz Offer at ¶¶ 49-55 & Exs. 33-35, 37-38, 102, 136, 146, 148-49; Klugman Offer at 12-13 & Exs. 9, 28-38), and advice or involvement concerning Danish securities law reporting requirements (*see* Markowitz Offer at ¶¶ 19-23 & Exs. 2-9; Klugman Offer at 14-15 & Exs. 47-52); U.S. securities, pension, and tax laws (*see, e.g.*, Markowitz Offer at ¶¶ 27-48, 67-68, 70-78 & Exs. 25-29, 39-46, 102, 123-24, 132, 137, 140-47; Klugman Offer at 14 & Exs. 41-46); the structure and formation of the plans' partnerships (*see* Markowitz Offer at ¶¶ 56-61); the formation and administration of Defendants' companies that sponsored the plans (*see* Markowitz Offer at ¶¶ 62-66); and payments to Ganymede (*see* Markowitz Offer at ¶¶ 79-81), have no bearing on Defendants' supposed good faith in making the beneficial ownership representations to SKAT.[9] The Court should not permit Defendants to make their prejudicial proffered argument to the contrary.[10]

---

8. *See also Int'l Bhd. of Elec. Workers, Loc. 90 v. Nat'l Elec. Contractors Ass'n*, No. CIV.A 3:06cv2 (SRU), 2008 WL 918481, at *13 (D. Conn. Mar. 31, 2008) ("[T]he absence of legal advice . . . does not constitute affirmative advice. . .").

9. To the extent Defendants or Ben-Jacob seek to introduce the proffered evidence for a purpose other than Defendants' argument that it supposedly evidences their good faith in making the ownership representations in the refund claims, SKAT reserves the right to object to the admissibility of such evidence in the parties' joint pretrial order and at trial. SKAT's motion seeks only to preclude Defendants' from arguing that Kaye Scholer's involvement gave them comfort in making the ownership representations to SKAT.

10. Nor is it relevant to their good faith if Defendants made a "complete disclosure of material facts" to their attorneys at Kaye Scholer. (*See* Markowitz Offer § IV.) Such evidence may be otherwise relevant to SKAT's claims against Defendants and Ben-Jacob, but "[g]ood faith reliance on the advice of counsel means more than simply supplying counsel with information." *Sec. & Exch. Comm'n v. Enters. Sols., Inc.*, 142 F. Supp. 2d 561, 576 (S.D.N.Y. 2001).

11

## **CONCLUSION**

For the reasons set forth above, SKAT respectfully requests that the Court grants its motion to preclude Defendants from adducing evidence of foreign law advice provided to others or concerning other dividend arbitrage schemes or arguing that counsel's involvement "blessed" their tax refund claims.

Dated: New York, New York
       October 7, 2024

HUGHES HUBBARD & REED LLP

By: /s/ Marc A. Weinstein
    William R. Maguire
    Marc A. Weinstein
    Neil J. Oxford
    Dustin P. Smith
    Gregory C. Farrell
    One Battery Park Plaza
    New York, New York 10004-1482
    Telephone: (212) 837-6000
    Fax: (212) 422-4726
    bill.maguire@hugheshubbard.com
    marc.weinstein@hugheshubbard.com
    neil.oxford@hugheshubbard.com
    dustin.smith@hugheshubbard.com com
    gregory.farrell@hugheshubbard.com

    *Counsel for Plaintiff Skatteforvaltningen (Customs and Tax Administration of the Kingdom of Denmark)*